```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
ROBERT GEORGE,

                        Movant,                              23-cv-9444 (PKC)

        -against-


UNITED STATES OF AMERICA,

                        Respondent.
-----------------------------------------------------------x
UNITED STATES OF AMERICA,

                                                             05-cr-249 (PKC)

        -against-                                            OPINION AND ORDER


ROBERT GEORGE,

                        Defendant.
-----------------------------------------------------------x
```

CASTEL, U.S.D.J.

On December 19, 2007, Robert George pleaded guilty pursuant to a plea agreement to Count One of a Superseding Indictment charging him with conspiring to possess with intent to distribute 50 grams and more of cocaine base, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A). George was sentenced to principally 204 months of imprisonment to be followed by a five-year term of supervised release. (ECF 27.) George has served his term of imprisonment, but remains confined pursuant to a civil commitment order entered by the United States District Court for the Western District of Missouri. He is presently confined at FMC Devens in Massachusetts.

1

On October 23, 2023, George filed a pro se motion to vacate his conviction pursuant to 28 U.S.C. § 2255, arguing that he received constitutionally ineffective assistance of counsel. (ECF 31.) About a month later, he filed a pro se petition for a writ of error coram nobis and moved for a reduction in sentence under the First Step Act of 2018 (the "First Step Act") insofar as it rendered certain provisions of the Fair Sentencing Act of 2010 applicable to him. (ECF 36 & 37.) Thereafter, he moved for discovery and production of documents. (ECF 38 & 41.)

On March 28, 2024, George sought the appointment of counsel. (ECF 45.) The Court granted this motion, and appointed David J. Cohen as counsel pursuant to the Criminal Justice Act and invited him to make a supplemental submission on George's behalf. (ECF 46.) In his July 29, 2024 letter to this Court, counsel for George candidly acknowledges that his "analysis of Mr. George's pro se 28 U.S.C. § 2255 motion, as well as the petition for a writ of error coram nobis, is that the claims raised therein do indeed appear to be without merit, for the reasons set forth in the government's response in opposition thereto. Counsel has so advised Mr. George." (ECF 49.)[1]

For reasons that follow, the Court will deny George's motion to vacate his conviction, his petition for writ of error coram nobis, his motion for a sentence reduction under the First Step Act, and his motion for discovery.

---

[1] The Court set August 12, 2024 as the extended date by which to make a supplemental submission on George's behalf. (ECF 48.) The Court understands counsel's letter of July 29, 2024, quoted above, to be his supplemental submission and that it requires no reply from the government.

BACKGROUND

On March 8, 2005, a grand jury returned a two-count indictment against George. (ECF 1). The first count charged George with conspiracy to possess with intent to distribute five grams and more of mixtures containing a detectable amount of cocaine base, i.e. crack cocaine, in violation of 21 U.S.C. §§ 812, 841(b)(1)(B). The second count charged George with using a firearm during and in furtherance of the drug trafficking conspiracy to commit murder, in violation of 18 U.S.C. §§ 924(i)(1), 2. (Id.)

Prior to his eventual guilty plea, the government requested that the late Judge Thomas P. Griesa, to whom the case was then assigned, order an evaluation of George to determine whether he was competent to stand trial. (ECF 15.) On August 25, 2006, Judge Griesa ordered that George undergo a psychiatric evaluation to determine whether he was competent to understand the nature and consequences of the proceedings against him or to assist properly in his defense, pursuant to 18 U.S.C. § 4241(b). (ECF 16.) The Bureau of Prisons prepared and submitted the report of the psychiatric examination to Judge Griesa opining that George met the diagnostic criteria for schizoaffective disorder, in remission with psychiatric medication and antisocial personality disorder. (ECF 40, Ex. 2 at 9.) The opinion of Dr. Lea Ann Preston, clinical psychologist, was that George "is able to understand the nature and potential consequences of the proceedings against him and assist properly in his defense." (Id. at 10.) Dr. Preston's prognosis was that George's mental illness would "require continued treatment with psychiatric medication in order for it to remain in remission. If he remains compliant with his current medication regimen, it is expected he will continue to remain competent and free of significant symptoms." (Id. at 11.)

3

Thereafter, Judge Griesa conducted a change-of-plea proceeding. (ECF 40-4.) George stated that he was satisfied with his counsel's representation of him. (ECF 40-4, at 5.) George's then lawyer confirmed that he had explained the plea agreement to George. (Id. at 6.) In response to questioning from the Court, George stated that he understood that he was pleading guilty to conspiring to distribute and possess with intent to distribute 50 grams and more of crack cocaine, and that he understood the meaning of a conspiracy. (Id. at 7-8.) He also confirmed that he understood the rights he was giving up by pleading guilty. (Id. at 9-10.) In response to questioning from the government, he stated that he sold crack cocaine at 166th Street and Finlay Avenue in the Bronx, New York during the years of 1998 to 2004 with at least one other person and that the "amount of crack that [he] and other people as part of that group sold was at least 50 grams over the years." (Id. at 11.) He also stated that he shot and killed Sean Dubois around 166th Street and Finlay Avenue on January 30, 2001. (Id. at 13.) Following this allocution, Judge Griesa found that George's plea was voluntary and factually based. (Id.) Judge Griesa accepted George's guilty plea to a one-count superseding indictment (ECF 21) for conspiring to possess with intent to distribute 50 grams and more of cocaine base, in violation of 21 U.S.C. § 841(b)(1)(A)(iii). (Id.) On November 7, 2008, Judge Griesa sentenced Mr. George principally to 204 months imprisonment followed by a five-year term of supervised release.

The government proffers that George was scheduled to be released from imprisonment on November 19, 2021. (ECF 40, at 8.) At the time, he was imprisoned at the Medical Center for Federal Prisoners ("MCFP") Springfield, and on November 17, 2021, the U.S. Attorney's Office for the Western District of Missouri petitioned for George's civil commitment pursuant to 18 U.S.C. § 4246. On March 15, 2022, the U.S. District Court for the Western District of Missouri issued an Order civilly committing George pursuant to 18 U.S.C.

§ 4246. George has completed the term of imprisonment imposed by Judge Griesa, but remains subject to the five-year term of supervised release. For that reason, George's motion to vacate his conviction under 28 U.S.C. § 2255 is not moot and may be considered by the Court. Scanio v. United States, 37 F.3d 858, 860 (2d Cir. 1994).

GEORGE'S SECTION 2255 MOTION WILL BE DENIED

George's section 2255 motion was filed on October 23, 2023, facially outside of the one-year statute of limitations imposed by the Antiterrorism and Effective Death Penalty Act of 1996. However, the Second Circuit has held that in "appropriate circumstances," the statute of limitations may be equitably tolled by mental illness. Bolarinwa v. Williams, 593 F.3d 226, 231 (2d Cir. 2010). The Court will assume without deciding that George's mental illness warrants equitable tolling of the statute of limitations.

On the merits, George's motion to vacate his conviction due to ineffective assistance of counsel fails. A defendant asserting that counsel's performance was constitutionally deficient under the Sixth Amendment must satisfy a two-prong test. "[A] convicted defendant must show both (a) 'that counsel's representation fell below an objective standard of reasonableness . . . under prevailing professional norms,' and (b) 'that the deficient performance prejudiced the defense,' i.e., 'that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" Henry v. Poole, 409 F.3d 48, 63 (2d Cir. 2005) (quoting Strickland v. Washington, 466 U.S. 668, 688, 687(1984)). "The challenger's burden is to show 'that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.'" Harrington v. Richter, 562 U.S. 86, 104 (2011) (quoting Strickland, 466 U.S. at 688)). "The determinative question at this step is

not whether counsel deviated from best practices or most common custom, but whether his representation amounted to incompetence under prevailing professional norms." Harrington v. United States, 689 F.3d 124, 129-30 (2d Cir. 2012).

In deciding whether counsel's performance was objectively unreasonable, a court "must make 'every effort . . . to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time,' and 'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" Henry, 409 F.3d at 63 (quoting Strickland, 466 U.S. at 689). In deciding the prejudice prong, a court must "determine whether, but for counsel's deficient performance, 'there is a reasonable probability that . . . the result of the proceeding would have been different,' for an 'error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment.'" Henry, 409 F.3d at 63 (quoting Strickland, 466 U.S. at 694, 691). The Court will address each of George's claims of ineffective assistance, none of which show objectively unreasonable performance by counsel or prejudice.

First, George argues that he received ineffective assistance because his counsel failed "to object to the introduction of evidence concerning the amount of grams 5 when the statute states 500." (ECF 31, at 5.) This contention has no basis in the record. He entered a plea of guilty to Count One of the Superseding Indictment that charged him with conspiring to violate 21 U.S.C. § 841(b)(1)(A) by possessing with an intent to distribute 50 grams and more of mixtures and substances containing a detectable amount of cocaine base. (ECF 21, 27.) At his plea proceeding, George himself stated that he and other conspirators sold at least 50 grams of cocaine. (ECF 40-4, at 12.) At the time he pleaded guilty, the statute provided that a person who

distributed or possessed with intent to distribute "50 grams or more of a mixture or substance . . . which contains cocaine base" shall be sentenced to a term of imprisonment which may not be less than ten years.  21 U.S.C. § 841(b)(1)(A)(iii) (effective from July 27, 2006 to April 14, 2009).  His guilty plea supported by his allocution triggered the ten-year mandatory minimum under the statute.  Nothing his lawyer did or failed to do altered those facts.  There was no meritorious objection to be lodged by his attorney.  Relatedly, George contends his counsel was ineffective for "putting on evidence that was inconsistent with the Government's evidence, the Government says it was 5 grams when the statutes says 500 grams."  (ECF 31, at 5.)  As discussed above, the Count One of the Superseding Indictment to which George pleaded guilty to charged him with conspiracy to distribute 50 grams and more of cocaine base, and George stated during his plea allocution that he was responsible for that quantity of the drug.  (ECF 40-4, at 12.)

Next, George argues that his counsel failed "to object to the Government['s] violation of Movant's Due Process rights."  (ECF 31, at 5.)  George does not explain how the government violated his due process rights, and the Court observes no violation in its review of the record.  This vague claim is insufficient to state a claim for relief under section 2255.  See Gonzalez v. United States, 772 F.3d 118, 131 (2d Cir. 2013) (In the section 2255 context, "presentation of conclusory allegations unsupported by specifics is subject to summary dismissal.")

George also asserts that his counsel was ineffective "for letting Movant plead guilty while mentally ill, and fail to test adversarial testing."  But before pleading guilty, George underwent a psychiatric evaluation pursuant to 18 U.S.C. § 4241(b) to determine whether he was competent to understand the nature and consequences of the proceeding against him or to assist

7

properly in his defense. (ECF 16.) The psychiatric report ultimately concluded that Mr. George was "able to understand the nature and potential consequences of the proceedings against him and assist properly in his defense. At the present time, he appears capable of disclosing appropriate information to his attorney, considering various courses of action, providing relevant testimony if necessary, and making decisions following consultations with his attorney. His mental illness is currently in remission and does not impair these abilities." (ECF 40-2, at 10-11.) At the plea hearing, Judge Griesa questioned George as to whether he understood the nature of the charges against him and the rights he was giving up by pleading guilty. Judge Griesa observed George's demeanor and listened to his responses to questions and concluded based upon all surrounding circumstances that his plea of guilty was voluntary and factually-based. "It is will-established that some degree of mental illness cannot be equated with incompetence to stand trial." United States v. Nichols, 56 F.3d 403, 412 (2d Cir. 1995) (internal quotation omitted).

George's counsel did not perform in an objectively unreasonable manner in not challenging the opinion expressed by the psychiatric expert who examined George. The psychiatric expert concluded that "George was aware of the charges against him which he correctly identified as Conspiracy to Distribute Cocaine Base and Homicide." (ECF 40-2, at 12.) George "expressed an intention to work with both of his defense attorneys in order to obtain the best possible outcome in his case. He displayed a good understanding of the concept of attorney/client privilege." (Id.) George also demonstrated a "good understanding of courtroom procedures and participant roles" in understanding the roles of the prosecution, defense, jury and judge, the burden of proof, the need for a unanimous verdict, and his right to testify and not testify on his own behalf. (Id.) Further, "[w]hen asked about the possible pleas that could be

8

entered by a defendant, Mr. George listed guilty and not guilty, and he correctly defined their meanings. He was also aware of the consequences following a guilty and not guilty verdict." (Id.) George "understood the concept of a plea agreement and was able to list advantages and disadvantages of accepting a plea agreement." (Id.) The psychiatric expert ultimately concluded that was competent to assist in his own defense and decide whether to plead guilty or proceed to trial. (Id.)

Based upon the report of the BOP psychiatrist, Judge Grisea necessarily concluded that there was no "reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense," 18 U.S.C. § 4241. The Second Circuit has "frequently reiterated that the district court's determination of competency based on its direct observations of the defendant is entitled to deference." United States v. Ioulevitch, 508 F. App'x 73, 75 (2d Cir. 2013) (citation omitted). George's counsel, like Judge Grisea, was "entitled to rely on the [] forensic report that found [George] competent to understand the proceedings and capable of working with his attorney if he chose to do so." United States v. Kerr, 752 F.3d 206, 216 (2d Cir. 2014). George's lawyer did not provide ineffective assistance in not objecting to the psychiatric evaluation or in failing to object to or advise against George's plea of guilty.

GEORGE'S PETITION FOR A WRIT OF ERROR CORAM NOBIS WILL BE DENIED

A petition for writ of error coram nobis is a collateral proceeding in which a court may correct fundamental errors in a prior final judgment. United States v. Morgan, 346 U.S. 502, 508 (1954). "A writ of error coram nobis is an extraordinary remedy." Doe v. United

9

States, 915 F.3d 905, 909 (2d Cir. 2019) (internal quotations omitted).  It "is not a substitute for appeal, and relief under the writ is strictly limited to those cases in which errors of the most fundamental character have rendered the proceeding itself irregular and invalid."  Foont v. United States, 93 F.3d 76, 78 (2d Cir. 1996) (internal quotations omitted).  In evaluating whether "extraordinary circumstances are present," the district court presumes that the proceedings leading to the petitioner's convictions were correct, and the petitioner must show otherwise.  Id. at 78-79.  The petitioner must demonstrate "1) there are circumstances compelling such action to achieve justice, 2) sound reasons exist for failure to seek appropriate earlier relief, and 3) the petitioner continues to suffer legal consequences from his conviction that may be remedied by granting of the writ."  Id. (internal quotations and citations omitted).

George's petition does not demonstrate that errors of the most fundamental character rendered the proceeding invalid.  George presents two claims for coram nobis relief.  First, he contends that the district court wrongly imposed a "sentence under the United States Sentencing Guidelines Career Offender provision, based on a nonexistent prior conviction for a crime of violence or controlled substance offense as to violate due process."  (ECF 36, at 8.)  But Judge Griesa did not find that George was a career offender under U.S.S.G. § 4B1.1.  Rather, Judge Griesa found that George's Guidelines range was 262 to 327 months' imprisonment, based on a Total Offense Level of 35 and a Criminal History Category of V.  The Guidelines calculation did not include a Career Offender enhancement and, indeed, it coincided with the Guidelines range stipulated by the parties in George's plea agreement which also did not include the Career Offender enhancement.  (ECF 40-7, at 19; ECF 40-3, at 3-4.)

Second, Mr. George contends that Judge Griesa lacked a sufficient factual basis to accept his guilty plea to conspiring to possess with intent to distribute 50 grams and more of

cocaine base.  (ECF 36, at 11.)  At George's plea proceeding, counsel for George requested that the government question George to establish a factual basis for the plea.  (ECF 40-4, at 12.)  With Judge Griesa's permission, the government asked George whether he sold "crack cocaine in the area of 166th Street and Finlay Avenue in Bronx, New York, during the years 1998 to 2004?"  (Id.)  George responded that he had.  (Id.)  The government then asked "while you were selling that crack cocaine, did you do that with at least one other person?"  (Id.)  George responded "yes."  (Id.)  The government then asked "did you understand that the amount of crack that you and other people as part of that group sold was at least 50 grams of the years?"  (Id. at 12-13.)  George replied "yes."  (Id. at 13.)  The government and counsel for George stated that they believed that was a sufficient factual basis for Mr. George's guilty plea, and the Court found that the plea was voluntary and factually based.  (Id.)  In George's petition for writ of error coram nobis, he features passages from his sentencing proceeding (not, as he states, his change of plea proceeding), wherein he attempts to recant his guilty plea, and states that the only reason he admitted to participating in a conspiracy was to "get less time."  (ECF 40-7, at 17.)  At his sentencing proceeding, Mr. George stated that while he had sold cocaine base "for myself by myself," he "never committed a conspiracy before" because "never sold drugs with nobody in the streets."  (Id. at 16.)  Judge Griesa replied "at the time of the plea he made very clear-cut admissions both of conspiracy and of the second degree murder – conspiracy to sell drugs.  He admitted to working with at least one other person."  (Id. at 19.)  The Judge noted that there had been no application to vacate the plea, and he found "that the admissions at the time of the plea were credible and still are credible, and I am not taking any steps to vacate this plea."  (Id.)

No error of the most fundamental character occurred.  Based on the record, it is apparent that George understood the charges against both at the time of his guilty plea and at

11

sentencing. Indeed, at sentencing, George put the conspiracy charge into his own words, stating that he had sold drugs "for myself by myself" and had never sold drugs with another person before. (ECF 40-7, at 16.) He had made the strategic decision to plead guilty because he wanted to "get less time." (Id. at 17.) A defendant who seeks to withdraw his plea "bears the burden of satisfying the trial judge that there are valid grounds for withdrawal, taking into account any prejudice to the government." United States v. Quinones, 906 F.2d 924, 928 (2d Cir. 1990) (internal quotation omitted). George never formally moved to withdraw his guilty plea, and even if he had, "[t]he fact that a defendant has a change of heart prompted by his reevaluation of either the Government's case against him or the penalty that might be imposed is not a sufficient reason to permit withdrawal of a plea." United States v. Gonzalez, 970 F.2d 1095, 1100 (2d Cir. 1992). The record belies George's claim that he was too confused about the conspiracy charge for Judge Griesa to conclude that his plea was voluntary and factually-based. No fundamental error occurred in the Judge's acceptance of his guilty plea.

GEORGE'S MOTION FOR A REDUCTION OF SENTENCE IS DENIED

George has moved under the First Step Act for a reduction in his sentence. (ECF 37.) One of the features of the First Step Act is that it rendered certain provisions of the Fair Sentencing Act of 2010 potentially retroactive thereby lowering the penalties for crimes in which the applicable controlled substance was crack cocaine. Section 404(b) of the First Step Act provides that an offender is eligible for a sentence reduction only if he previously received "a sentence for a covered offense." § 404(b), The First Step Act, Public Law No. 115-391, 132 Stat. 5194. A "covered offense," in turn, refers to a violation of a federal criminal statute whose penalties were modified by section 2 or 3 of the Fair Sentencing Act of 2010 that the defendant

committed before August 3, 2010.  Id.  Relevant here, the Fair Sentencing Act altered the threshold drug quantities that trigger the varying penalty ranges for cocaine base offenses located in 21 U.S.C. § 841(b)(1), and increased the threshold quantity for conviction under § 841(b)(1)(a) from 50 to 280 grams of cocaine base.  Fair Sentencing Act, Public Law No. 111-220, § 2(a), 124 Stat. 2372, 2372.  In Terry v. United States, 593 U.S. 486, 495 (2021), the Supreme Court held a violation of 21 U.S.C. § 841(b)(1)(A)(iii) is a "covered offense" under the First Step Act.  George was convicted of violating 21 U.S.C. § 841(b)(1)(A)(iii), and committed the offense before August 3, 2010.  He is thus eligible for resentencing under the First Step Act.

The government responds that "[b]ecause George has already completed his incarceratory sentence, the FSA motion is moot."  In fact, George completed his term of imprisonment on November 19, 2021, approximately two years before he moved for a reduction in sentence under the First Step Act on November 30, 2023, and the Court can provide no relief regarding his term of imprisonment.  George, however, is still exposed to a term of supervised release.  The Second Circuit has held that when a defendant is exposed to a term of supervised release but has completed his term of imprisonment, the district court can still grant the defendant "effectual relief" in the form of a reduction of supervised release.  United States v. Young, 998 F.3d 43, 49 (2d Cir. 2021) ("Because [defendant] has been released from custody, the parties dispute whether [defendant's] appeal from the district court's denial of his motion for a sentence reduction with respect to Count Two is moot.  We conclude that it is not.  If we were to hold that Count Two is a "covered offense" under the First Step Act, Young would be eligible for a reduction in his term of supervised release on that count.")  The Court concludes that George's motion for resentencing under the First Step Act is not moot, because while he has

completed his term of imprisonment, he remains exposed to his five-year term of supervised release once released from civil commitment.

But no reduction to George's five-year term of supervised release is warranted. Even if George's Total Offense Level or Criminal History Category had changed as a result of the First Step Act, section 841(b)(1)(A) of title 21 provides that a district judge shall "impose a term of supervised release of at least 5 years" unless the defendant's prior convictions for "serious drug felon[ies] or serious violent felon[ies]" warrant a ten-year term of supervised release. George's five-term of supervised release is the minimum the Court could impose under statute, regardless of the length of the term of imprisonment.

GEORGE'S DISCOVERY MOTIONS WILL BE DENIED

George has moved for discovery and production of documents pursuant to Rule 6 of the Rules Governing Section 2255 Proceedings. (ECF 38 & 41.)[2] "A habeas petitioner, unlike the civil litigant in federal court, is not entitled to discovery as a matter of ordinary course." Bracy v. Gramley, 520 U.S. 899, 904 (1997). Under Rule 6(a), "[a] judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Criminal Procedure or Civil Procedure, on in accordance with the practices and principles of law." The question of whether to authorize discovery is left to a district judge's discretion. Lewal v. United States, No. 97-2248, 1998 WL 425877, at *2 (2d Cir. June 9, 1998) (summary order). In order to show "good cause," a petitioner must present "specific allegations" giving the Court "reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is entitled to

---

[2] George has filed two motions that appear identical; the document filed at ECF 41 combines the motion filed at ECF 38 and the accompanying memorandum filed at ECF 39.

relief." Bracy, 520 U.S. at 908-09 (internal quotations and alterations omitted).  As discussed above, George has not presented any plausible reason to believe that further factual development will entitle him to relief.  In the exercise of its discretion, the Court denies George's motions for discovery pursuant to Rule 6.

CONCLUSION

The Court has considered the entirety of George's arguments. His motion to vacate, set aside or correct his conviction and sentence pursuant to 28 U.S.C. § 2255 (ECF 31) is DENIED.  His petition for writ of error coram nobis (ECF 36) is DENIED.  His motion for a sentence reduction under the First Step Act (ECF 37) is DENIED.  His motions for discovery (ECF 38 & 41) are DENIED.

In view of the foregoing and extending special solicitude to George, the Court also dismisses George's pro se submission titled "Common Law Criminal Complaint in the Admiralty for the Perpetration of Kidnapping, Involuntary Servitude & Torture" naming the Department of Justice and the United States as defendants (ECF 42) as frivolous and lacking an arguable basis in fact or law.  28 U.S.C. § 1915(d).  This Court's dismissal does not impact George's right to challenge on any non-frivolous legal and factual basis the lawfulness of his continued incarceration in the proper district.[3] 18 U.S.C. § 4245(a).

The Clerk is directed to terminate the motions (ECF 6, 7, 9, 12 & 13 in 23-cv-9444 (PKC) and ECF 31, 36, 37, 38 & 41 in 05-cr-249 (PKC)) and close 23-cv-9444 (PKC).

---

[3] George's appointed counsel has advised the Court that he has been in discussion with counsel from the Federal Defenders Office in the Western District of Missouri concerning various remedies available to George regarding his continued confinement. (ECF 49.)  To avoid doubt, the appointment of counsel by this Court extends to counsel's exploration of remedies relating to the lawfulness of George's continued confinement, including making an application on George's behalf in any appropriate district for the appointment of counsel to pursue those remedies.

George has not made a substantial showing of the denial of a constitutional right, and accordingly, a certificate of appealability will not issue. 28 U.S.C. § 2253; see Blackman v. Ercole, 661 F.3d 161, 163-64 (2d Cir. 2011). The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this order would not be taken in good faith and therefore in forma pauperis status is denied for the purpose of an appeal. See Coppedge v. United States, 369 U.S. 438, 444-45 (1962).

SO ORDERED.

_P. Kevin Castel_
United States District Judge

Dated: New York, New York
August 20, 2024